## LOMBARDO v. REED et al.
### No. 3742.

Court of Civil Appeals of Texas. Beaumont.

Nov. 21, 1940.

Rehearing Denied Dec. 11, 1940.

Morris & Bennett, of Beaumont, for appellant.

Vinson, Elkins, Weems & Francis and H. W. Van Zandt, all of Houston, for appellee.

WALKER, Chief Justice.

This suit was filed May 8, 1939, in County Court of Jefferson County at Law, Jefferson County, Texas, by appellant, Thomas Lombardo, Trustee, against appellees, C. E. Reed and Geo. W. Bowes, on a promissory note for the sum of $411.96, dated January 7, 1935, executed by appellees to appellant, payable in monthly installments beginning January 1, 1935—the first two installments of $10 each, the remaining installments of $15 each—with interest after maturity at 6% per annum, and for 10% additional as attorney's fees. On default in the payment of any monthly installment, the payee on his option could mature all remaining installments, in which event the note would draw interest at the rate of 10% per annum from the exercise of the option.

On trial to a jury, judgment was for appellees on their pleas of limitation and that they executed the note as an accommodation maker and an accommodation surety for appellant. Neither of these findings has support in the evidence.

On the issue of limitation: Not one cent was paid on the note. On a former trial, appellant filed his motion for judgment non obstante veredicto, and submitted a form of judgment with interest from the 15th day of January, 1935. On this trial the jury found that appellant exercised his option to mature the note as of that date. On cross-examination, appellant testified:

"Q. Here is what I believe you are asking for, principal of the note with interest thereon from January 15, 1935, at the rate of ten per cent per annum, together with ten per cent of said amount, principal and interest, at attorney's fees, is that correct? A. I guess so, the lawyer fixed it up. * * *

"Q. Now this note provides that on the failure to pay any installment or any interest the holder may mature the same and the whole note will at once become due and payable? A. Yes, sir.

"Q. You understand you are asking for interest on the whole amount from maturity, January 15, 1935, at the rate of ten per cent? A. That is what the note reads.

"Q. Which means you matured the whole note on January 15, 1935 * * * A. How can I mature * * *

"Q. Because it says the failure to pay any installment shall mature the whole note. A. I didn't mature that note altogether until we filed the suit.

"Q. Well, in order for you to get interest from January 15, 1935, which you are asking for, you matured it at that time? * * * A. I didn't do it then, I done it at the time we filed the suit, that is when the note became due.

"Q. At the time you say you filed the suit it became due at that time? A. No, the interest became due after each payment is made, otherwise when the payments are supposed to be made, that is when it becomes due on each payment."

This testimony is insufficient to support an inference that appellant matured the note as .of January 15, 1935. Whatever inference could be given the fact, standing alone, that appellant asked the court on a former trial for judgment with interest from January 15, 1935, was rebutted as a matter of law by his testimony in explanation of this requested judgment. On the evidence, the legal conclusion must follow that appellant did not exercise his option to mature the note.

■ There is no evidence to sustain the finding that appellees were accommodation maker and surety on the note. Operating a filling station in Rosenberg, Texas, appellee Reed bought his supplies from Oleander Oil & Supply Company. The amount of the note is the exact balance due by him on his account with the Company, as shown by its books. After his account was closed, the business of the Company was sold to Pure Oil Company, and appellant was made trustee for the stockholders, to collect the outstanding accounts. At the time this note was executed there were only two stockholders—appellant owning 65% and a Mr. Sullivan owning 35%. ·On appellant's testimony, he took this note from appellees in payment of appellee Reed's account. He testified that Bowes had orally guaranteed the payment of the account, and Bowes' testimony was subject to the same inference. Appellant testified that Reed was the principal on the note and, on his oral guaranty, Bowes was the surety.

Reed testified that, operating his business at Rosenberg, he began to lose money and notified the Company that he was going to close his business; that to keep the business a going concern the Company agreed with him to furnish him supplies on a commission basis and to absorb his losses; that he remitted regularly for the supplies shipped him under this contract and that the Company remitted him regularly for his commissions; that the amount of the note was the balance of the account, as shown on the books of the Company. He did not testify that this balance was the loss sustained by him in operating his business, nor that he executed the note as an accommodation to appellant, nor that appellant told him he would not have to pay the note. We quote from his testimony:

"Q. How did you happen to sign that note? A. I signed that note after Mr. Little's death. Mr. Lombardo came over and asked me, talked to me about it and said he wanted to present a report to the other stockholders. * * *

"Mr. Bennett: We object on the ground that the testimony contradicts a written contract.

"The Court: Overruled.

"Mr. Bennett: Note our exception.

"A. * * * that he wanted to present a report to his stockholders and wanted to make as satisfactory a report as he could. * * *

"Q. Well, after you signed this note you were called on several times to pay it, weren't you?· A. I was called on at one time by Mr. Lombardo, here in Beaumont.

"Q. When was that? A. One Christmas I was over here, I believe it was, I don't remember the date, it was probably two years ago.

"Q. At that time you told him you would pay it when you could, didn't you? A. At that time I didn't tell Mr. Lombardo anything, I went to see Mr. Bowes to see what he knew about it.

"Q. That is all."

Appellee Reed did not testify that at any time after the note was executed he denied his liability thereon to appellant, prior to the time this suit was filed.

Appellee Bowes testified:

"Mr. Lombardo came to me about making a note, said he wanted the note in his reports to the stockholders to show them he was actively pursuing the job of collecting these accounts and he wanted to know if Reed signed a note if I would .sign it, so then I told him to send the note over to Reed and if he signed it why then I would sign it. When Reed had signed the note he brought it back to me and I put my name on it in view of the past reliable transactions we had had and he now comes to collect on it, that is all, the whole story of the thing.

"Q. Did you tell Mr. Lombardo you would be surety on the note, that you would pay the note? A. No, sir.

"Q. Did Mr Lombardo say anything at the time about collecting the note? A. .No.

"Q. He told you, I believe you testified, he wanted it so·it would look good on his books? A. That is it, to include it in his report to his other stockholders. * * *

"Q. Did he say anything about collecting the note? A. No.

"Q. Any time thereafter? A. We mentioned it a time or two after that.

"Q. How long after the note was signed was that? A. Oh, I don't know.

"Q. What did he say? A. Just wondered if they were going to make any payments on it."

On the undisputed evidence, the judgment of the lower court in favor of appellees must be reversed and judgment here rendered for appellant for the amount of his note, with interest at 6%, with 10% additional as attorney's fees.

Reversed and rendered.